UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MORGAN BRYCE HIGHFIELD,

Plaintiff,

v. Case No. 8:25-cv-1720-CPT

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.
_______________________________/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his application for Supplemental Security Income (SSI). (Doc. 21). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff received SSI as a child due to a disability. (R. 10). Upon attaining the age of eighteen, however, the Plaintiff's eligibility was reevaluated by the Social Security Administration (SSA) under the standard for disability in adulthood. *Id.* As a result of this review, the SSA found that the Plaintiff was no longer disabled and that finding was upheld on reconsideration. *Id.*

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in September 2024. *Id.* The Plaintiff was represented by counsel at that proceeding and testified, as did a vocational expert (VE). *Id.*

In a decision issued in October 2024, the ALJ determined that the Plaintiff (1) was eligible for SSI benefits as a child for the month preceding the month in which the Plaintiff turned eighteen but was no longer disabled as of February 1, 2021, based on the SSA's disability reassessment; (2) had the severe impairments of obesity, anxiety disorder, and major depressive disorder; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform light work subject to certain mental limitations; and (5) based on the VE's testimony, could engage in jobs that exist in significant numbers in the national economy—namely, cleaner, garment sorter, and laundry worker. (R. 12–19). Given these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 19).

The Appeals Council denied the Plaintiff's subsequent request for review. (R. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems significant enough to prevent a person from performing any gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits. *See id.*; *see also Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

II.

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citation omitted).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *See id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)). Although the claimant bears the burden

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

of proof through step four, the burden temporarily shifts to the Commissioner at step five. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot engage in the work identified by the Commissioner. *See Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (internal quotation marks and citation omitted).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision disposing of the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial evidence. *See id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *See Viverette*, 13 F.4th at

1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *See Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises three challenges on appeal: (1) the ALJ did not properly consider the opinion of a psychological consultative examiner, Dr. Daniel Vaningen; (2) the ALJ failed to account for the prior administrative findings of two state agency psychological consultants, Dr. Jessy Sadovnik and Dr. Pauline Hightower; and (3) the ALJ neglected to include in her RFC determination any restrictions relating to the Plaintiff's obesity. (Doc. 21). Each of these challenges will be addressed in turn.

A.

The Plaintiff's first two challenges pertain to his mental limitations. Before delving into the merits of these challenges, some background is necessary.

Where, as here, a claimant presents a "colorable" claim of a mental impairment, an ALJ must apply the regulatorily mandated Psychiatric Review Technique (PRT) at either step two or step three. *See Moore*, 405 F.3d at 1213–14 (citation omitted); *see also Cannon v. Astrue*, 2011 WL 4346566, at *5 (M.D. Fla. Sept. 16, 2011) (observing that the PRT can be undertaken at steps two and three) (citation omitted). This technique requires an assessment of how a claimant's mental impairment affects four broad

functional areas (known as the Paragraph B criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3).

After applying the PRT, the Regulations mandate that an ALJ provide a specific explanation for her determinations, including the degree of limitation found in each of the above-listed functional areas. *Id.* § 416.920a(c)(4), (e)(4). The degrees are organized along a five-point scale: (1) none, (2) mild, (3) moderate, (4) marked, and (5) extreme. *Id.* § 416.920a(c)(4). The Regulations define these categories as follows: (1) none—a claimant is able to function in an area "independently, appropriately, effectively, and on a sustained basis;" (2) mild—a claimant is "slightly limited" in his ability to function in a domain independently, appropriately, effectively, and on a sustained basis; (3) moderate—a claimant has a "fair" capacity to function in an area independently, appropriately, effectively, and on a sustained basis; (4) marked—a claimant is "seriously limited" in his ability to function in a domain independently, appropriately, effectively, and on a sustained basis; and (5) extreme—a claimant cannot function in an area independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. § 12.00(F)(2)(a)–(e). Once an ALJ completes her PRT analysis, she must incorporate the results of that assessment into her findings and conclusions. *See Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam) (citing *Moore*, 405 F.3d at 1213–14).

The PRT, however, is separate and apart from an ALJ's step four RFC finding, which represents a more detailed evaluation of a claimant's ability to function. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). To determine a claimant's RFC, as well as the claimant's ability to engage in his past relevant work, an ALJ must decide given all the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's impairments and related symptoms. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. In rendering this determination, an ALJ must consider all medical opinions and prior administrative medical findings in a claimant's case record, together with other relevant evidence. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citation omitted).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant can still do despite his impairments; whether the claimant is limited in his capacity to perform various work activities; and whether the claimant can see, hear, or use his other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 416.913(a)(2). A prior administrative medical finding, on the other hand, pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and psychological consultants at a prior level of review" but does not constitute an "ultimate determination about whether [the claimant is] disabled[.]" 20 C.F.R. § 416.913(a)(5).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for disability applications filed on or after March 27, 2017, as this one was. *See* 20 C.F.R. § 416.920c; *see also Glover v. Comm'r of Soc. Sec. Admin.*, 2022 WL 17826364, at *2–3 & n.2 (11th Cir. Dec. 21, 2022) (per curiam). The ALJ now determines the persuasiveness of a medical opinion and a prior administrative medical finding instead of generally predicating their weight on the source or consultant who offered the opinion or finding. *Compare* 20 C.F.R. § 416.927(c), *with* 20 C.F.R. § 416.920c. In conducting this assessment, an ALJ must consider the following five factors: (1) consistency; (2) supportability; (3) the source or consultant's relationship with the claimant; (4) the source or consultant's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 416.920c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, consistency and supportability are the most important. *See* 20 C.F.R. § 416.920c(b)(2); *see also Nixon*, 2021 WL 4146295, at *3 (citation omitted). Consistency addresses whether a medical source or consultant's opinion or finding comports with other evidence in the record, while supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering his

own opinion or finding. *See* 20 C.F.R. § 416.920c(c)(1)–(2); *see also Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *4 (M.D. Fla. Feb. 15, 2022); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations dictate that an ALJ discuss consistency and supportability but do not mandate that she describe how she assessed the other three factors. *See* 20 C.F.R. § 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).

In addressing the consistency and supportability factors, an ALJ need only "state[ ] with at least some measure of clarity the grounds" for her assessment of the challenged opinion evidence. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024) (cleaned up). It is not necessary that an ALJ employ any "magic words" in doing so or even use the terms "consistency" or "supportability." *Davis v. Comm'r of Soc. Sec.*, 2025 WL 1123853, at *5 (11th Cir. 2025) (citations omitted); *see also id.* ("We emphasize that there are no magic words to state with particularity the weight given to medical opinions or the reasons for discounting them."). Nor is it necessary for an ALJ to set forth the basis for her consistency and supportability findings in the same part of her decision as the rest of her persuasiveness analysis. *See Adams v. Soc. Sec. Admin.*, 2024 WL 2846726, at *3 (11th Cir. June 5, 2024) (noting that ALJ "opinions should be read as a whole and need not repeat a discussion of the facts that establish inconsistency, merely to place it near the conclusion that an opinion is inconsistent with the medical evidence") (citing *Raper*, 89 F.4th at 1275–76); *see also*

*Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *6 (M.D. Fla. Feb. 15, 2022) (deeming the ALJ's consistency analysis to be sufficient despite it "being separate from the rest of the [ALJ's] persuasiveness evaluations") (citation omitted); *Roussin v. Comm'r of Soc. Sec.*, 2021 WL 6205948, at *9 (M.D. Fla. Dec. 16, 2021) (concluding "that the ALJ did not err in broadly referencing the general findings that [she] determined to be inconsistent with the opinion [at issue] because the ALJ had thoroughly discussed the findings of [the claimant's] treating providers earlier in the same decision") (citing *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014)), *report and recommendation adopted*, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022). On appeal, an ALJ's persuasiveness evaluation will be upheld as long as the reviewing court can engage in "a meaningful review and determine whether substantial evidence supports the ALJ's [determination.]" *Coleman v. Comm'r of Soc. Sec.*, 2026 WL 191806, at *6 (M.D. Fla. Jan. 26, 2026) (citation omitted); *see also Kantor v. Kijakazi*, 2022 WL 10624512, at *6 (M.D. Fla. Mar. 30, 2022) (same).

In this case, the ALJ applied the PRT at step three and found that the Plaintiff had moderate limitations in the four domains of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. (R. 13). And at step four, the ALJ incorporated into her RFC determination the restrictions that the Plaintiff could "understand, remember, and carry out simple instructions;" could "use judgment to make simple work-related decisions;" could have "occasional interactions with

supervisors, coworkers, and the public;" and could "perform tasks that d[id] not involve a production rate pace, such as assembly line or an hourly production quota." *Id.* at 14. In making these findings, the ALJ considered the opinions of Drs. Vaningen, Sadovnik, and Hightower. Because the Plaintiff's first challenge centers on the ALJ's evaluation of Dr. Vaningen's opinion (Doc. 21), the Court begins its analysis there.

In February 2021, Dr. Vaningen conducted a mental status examination of the Plaintiff. (R. 15–16). That examination was attended by the Plaintiff's mother and included a discussion with the Plaintiff and his mother about the Plaintiff's symptoms and living circumstances. *Id.* at 16. In her decision, the ALJ concluded that Dr. Vaningen's opinion was unpersuasive after engaging in a consistency and supportability assessment. *Id.* at 17. The Plaintiff now argues that the ALJ did not "appropriately" resolve the consistency and supportability factors in arriving at her conclusion. (Doc. 21 at 8). The Court disagrees.

The ALJ commenced her appraisal of Dr. Vaningen's opinion by recounting the information the Plaintiff and his mother supplied Dr. Vaningen during his mental status examination, along with the nature of the observations Dr. Vaningen made as part of that examination. As the ALJ explained in her decision:

> During the evaluation, the [Plaintiff] reported that he lived with his mother and brother, and was a senior in high school, but was currently on a break. He also reported that he was not employed. Further, the [Plaintiff's] mother reported that he was attempting to finish high school and suggested that he would need special assistance. His mother also reported that the [Plaintiff] had Tourette's symptoms and anxiety.

> Although[ the Plaintiff] reported extreme anxiety and depression, frequent panic attacks, sleep difficulty and frequent migraine headaches, he had no current hospitalizations, no self-harm ideations, and was not on any medications for his symptoms. A mental status exam [of the Plaintiff] . . . showed cooperative demeanor, appropriate dress, hygiene, and grooming, normal eye contact, clear speech, coherent and goal directed thought processes, depressed and anxious mood and congruent affect, limited attention and concentration, limited memory, limited insight, and limited judg[ment].

(R. 16).

As a result of Dr. Vaningen's mental status examination and as the ALJ referenced later in her decision, Dr. Vaningen opined that "the [Plaintiff] had marked limitations with interacting adequately with others in the workplace, sustaining concentration, and performing a task at a consistent pace, as well with his ability to regulate emotions." *Id.* at 17. Upon review, the ALJ declined to credit Dr. Vaningen's "marked" functional assessments. *Id.* With respect to the matter of consistency, the ALJ noted that Dr. Vaningen's findings did not cohere with the "longitudinal" medical records from Caring Community Counseling (CCC), where the Plaintiff received mental health treatment over a roughly eighteen-month period between October 2021 and March 2023. *Id.* at 16–17. As reflected in the CCC materials, which the ALJ detailed elsewhere in her decision, the Plaintiff stated in an October 2021 CCC visit, inter alia, that "he was in a relationship;" that while he had some difficulties at school, he "enjoyed literature and writing;" and that although "he reported low motivation, depression, mood swings, and get[ting] easily agitated," he was able to

"manage[ ] his symptoms and could control his aggression." *Id.* at 16. The ALJ further observed that a mental status exam of the Plaintiff performed during that same visit "showed cooperative behavior, good eye contact, sad, depressed mood and affect, no self-harm ideations, and intact insight and judg[ment]." *Id.*

The ALJ also pointed out that at a CCC visit approximately a year later, in November 2022, the Plaintiff remarked that he was doing "ok" and added that despite there being "some days . . . [where he] fel[t] down," his "mood was stable." *Id.* The ALJ noted as well that three months afterwards, in February 2023, the Plaintiff not only advised that he was "good," but also stated that he was compliant with his medications, that he was "much more positive and optimistic," that he had improved his self-care, that his sleep was "stable," that his appetite was "normal," and that the level of his communication with his mother and therapist was "good." *Id.* The ALJ's analysis of these CCC records—which cover a far more expansive time frame than Dr. Vaningen's lone appointment with the Plaintiff in February 2021—are sufficient to meet the consistency prong.

In effort to avoid this result, the Plaintiff contends that the ALJ's "consistency analysis is extremely scant" and "vague" and that it merely "summarize[s]" the CCC documentation. *See* (Docs. 21, 23). This criticism ignores the breadth of the ALJ's consistency evaluation, which extends across the whole of her decision. *See Adams*, 2024 WL 2846726, at *3 (instructing that an ALJ's opinion "should be read as a whole") (citing *Raper*, 89 F.4th at 1275–76); *see also Vachon*, 2022 WL 458604, at *6

(finding that the ALJ's consistency analysis passed muster even though it was separated from the rest of her persuasiveness evaluation). It also mischaracterizes the ALJ's robust examination of the CCC treatment notes, in which the ALJ identified discrete evidence undermining Dr. Vaningen's assessments. (R. 16).[4]

Turning to the supportability factor, the ALJ found that Dr. Vaningen's "marked" functional assessments were lacking on this score too. (R. 17). The ALJ provided a number of grounds as to why she reached this conclusion, beginning with her assessment that Dr. Vaningen's "marked" findings seemingly rested "largely" on the Plaintiff's and his mother's subjective complaints. *Id*. This rationale is adequately substantiated by the record evidence.

As described earlier, the ALJ recounted in her decision the information that the Plaintiff and his mother disclosed to Dr. Vaningen during their February 2021 visit with him. *Id*. at 16. As the ALJ documented in her decision and as also mentioned above, this information included the mother's claims that the Plaintiff suffered from anxiety, displayed Tourette's symptoms, and needed special assistance, as well as the Plaintiff's self-reports about, inter alia, his depression, sleep difficulties, frequent panic attacks, and frequent migraine headaches. *Id*.

---

[4] The Plaintiff's reliance on *Brown v. Comm'r of Soc. Sec.*, 2021 WL 2917562 (M.D. Fla. July 12, 2021) in this regard is misplaced. In *Brown*, the court quoted another decision, which stated that an "ALJ cannot merely summarize the evidence, as a whole, and then conclude that [medical] opinions are not consistent with the evidence as a whole." *Id.* at *4 (internal quotation marks and citation omitted). For the reasons discussed above, this plainly did not occur here.

As discussed by the ALJ in her decision as well, juxtaposed against these claimed symptoms were the results of Dr. Vaningen's mental status exam of the Plaintiff, which—as referenced above—showed that the Plaintiff exhibited a "cooperative demeanor[;] appropriate dress, hygiene, and grooming[;] normal eye contact[;] clear speech[;] coherent and goal directed thought processes[;] depressed and anxious mood and congruent affect[;] limited attention and concentration[;] limited memory[;] limited insight[;] and limited judg[ment]." *Id.* Since several of these findings did not mesh with the Plaintiff's and his mother's assessments, it was reasonable for the ALJ to surmise that Dr. Vaningen placed too much weight on the Plaintiff's and his mother's subjective complaints. *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) ("[An] ALJ may discount a medical opinion that appears to be based primarily on the claimant's subjective complaints.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004)); *Aguilera v. Berryhill*, 2017 WL 2813589, at *7 (S.D. Fla. June 29, 2017) (upholding an ALJ's decision where she discounted a medical opinion for "improperly rel[ying] on [the claimant's] subjective report[s] of symptoms and limitations" because "there were persuasive reasons for questioning the reliability of [the claimant's] subjective complaints").

In addition to Dr. Vaningen's apparent overreliance on the Plaintiff's claimed symptoms, the ALJ found as part of her supportability evaluation that Dr. Vaningen's observations about the Plaintiff's "adequate" demeanor and social skills in particular

did not square with the Plaintiff's supposed marked difficulties in interacting with others in a workplace. (R. 17). This determination is similarly bolstered by the record evidence.

Contrary to the Plaintiff's cramped reading of the ALJ's supportability analysis (Docs. 21, 23), it is apparent from the entirety of the ALJ's decision that her comment about the Plaintiff's "adequate" demeanor was a shorthand reference to Dr. Vaningen's contrasting examination findings detailed by the ALJ elsewhere in her decision. *See id*. at 16 (noting that during the February 2021 mental status exam, the Plaintiff exhibited, among other traits, "cooperative demeanor, appropriate dress, hygiene, and grooming, normal eye contact, clear speech, [and] coherent and goal directed thought processes."). It was reasonable for the ALJ to conclude that these objective assessments undermined the persuasiveness of Dr. Vaningen's more restrictive limitations, especially when viewed together with the normal examination findings contained in the CCC records. *Id.*

The Plaintiff also takes issue with a remark made by the ALJ about the Plaintiff's conflicting descriptions of his schooling when addressing the supportability factor. (Doc. 21). The ALJ observed in this regard that the Plaintiff "reported being in high school in his senior year but then, in October of the same year, told another provider he had not attended school for [two] years." (R. 17). The ALJ mentioned this contradictory statement by the Plaintiff immediately after referencing Dr. Vaningen's seeming overemphasis on the Plaintiff's subjective complaints. *Id.* Viewed

in this context, a fair interpretation of the ALJ's comment is that the ALJ was highlighting the credibility issues with the Plaintiff's self-reports, which further called into question the merits of relying on his claimed symptoms and, by extension, Dr. Vaningen's marked assessments predicated on same.[5] In any event, as the Commissioner argues, this was "just one" remark that the ALJ made in her evaluation of Dr. Vaningen's opinion and does not detract from the substantial evidence which buttresses the ALJ's persuasiveness determination. (Doc. 22 at 7).

The Plaintiff additionally contends that the ALJ erred by not incorporating more elevated restrictions in her RFC determination to account for the marked limitations that Dr. Vaningen recommended. (Doc. 21). The problem with this argument is that an ALJ is not required to adopt constraints propounded by a provider when the ALJ deems the provider's underlying opinion to be unsupported. *See Sturdivant v. Soc. Sec. Admin., Comm'r*, 2023 WL 3526609, at *4 (11th Cir. May 18, 2023) (sustaining an ALJ's decision where she declined to impose limitations set forth in a medical opinion which she found to be unpersuasive); *Schulpius v. Comm'r of Soc. Sec.*, 2021 WL 7501139, at *9 (M.D. Fla. Aug. 5, 2021) (concluding that the ALJ did not need to include restrictions proposed in a medical opinion which the ALJ did not

[5] Of import to this point, the ALJ found after carefully considering the record evidence that although the Plaintiff's "medically determinable impairments could reasonably be expected to cause symptoms," the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (R. 15). The Plaintiff does not meaningfully contest this credibility finding.

credit) (citing *Crawford*, 363 F.3d at 1161); *Cates v. Comm'r of Soc. Sec.*, 2017 WL 3923027, at *10 (M.D. Fla. Sep. 7, 2017) ("Because the [c]ourt finds that the ALJ did not err by rejecting th[e] opinions [of certain treating physicians], the [c]ourt finds that the ALJ did not err in failing to include the functional limitations contained within those opinions when determining the RFC and posing the question to the [VE]."), *aff'd,* 752 F. App'x 917 (11th Cir. 2018).

Two final thoughts relative to the Plaintiff's first challenge. To the extent that the Plaintiff invites the Court to reweigh the evidence relative to Dr. Vaningen's opinion and the Plaintiff's attendant limitations, the Court is prohibited from doing so at this juncture. *See Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore*, 405 F.3d at 1211). And to the extent that the Plaintiff cites portions of the record which he maintains buttress Dr. Vaningen's assessments, he misapprehends the nature of the Court's role on appeal. As the Eleventh Circuit has explained, "[u]nder [the] substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports [his] position; [ ]he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 602 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). The Plaintiff has not done so here.

B.

The Plaintiff's second challenge—as explained earlier—concerns the prior administrative findings rendered by Drs. Sadovnik and Hightower. (Doc. 21). The ALJ described the specifics of those findings in her decision as follows:

> [Drs. Sadovnik and Hightower concluded that the Plaintiff] demonstrates moderate limitations in his ability to understand and remember detailed instructions. The [Plaintiff] is able to carry out very short and simple instructions but has moderate limitations in carrying-out detailed instructions. He demonstrates difficulty in maintaining attention and concentration for extended periods. He demonstrates a moderate limited ability to perform activities within a schedule and maintain regular attendance. The [Plaintiff] has moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The [Plaintiff] has moderate limitations in his ability to interact with the general public. The [Plaintiff] demonstrates moderate limitations in his ability to accept instructions and respond appropriately to criticism from supervisors. He demonstrates a moderate[ly] limited ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The [Plaintiff] is moderately limited in responding appropriately to changes in the work setting and[ ] in his ability[ ] to set realistic goals and/or making plans independently of others[.]

(R. 17). As reflected in Drs. Sadovnik and Hightower reports, both of which the ALJ explicitly referenced in her decision, *see id.*, Drs. Sadovnik and Hightower also opined that the Plaintiff could "meet the basic demands of work on a sustained basis despite any limitations" from his impairments. *Id.* at 77, 87.

After conducting a consistency and supportability analysis, the ALJ found that Drs. Sadovnik's and Hightower's assessments were persuasive and cited the record evidence to buttress her determination. *Id.* at 16–17. The ALJ found as well that Drs. Sadovnik's and Hightower's prior administrative findings coincided with her RFC determination, *id.* at 17, which included—as noted previously—that the Plaintiff could "understand, remember, and carry out simple instructions[;]" could "use judgment to make simple work-related decisions[;]" could have "occasional interactions with supervisors, coworkers, and the public[;]" and could "perform tasks that do not involve a production rate pace, such as assembly line or an hourly production quota." *Id.* at 14.

The Plaintiff now contends that the ALJ erred because despite crediting Drs. Sadovnik's and Hightower's opinions, the ALJ did not account for certain restrictions that those providers recommended—namely, moderate limitations in workday/workweek interruptions, maintaining consistent attendance, and performing activities within a schedule. (Doc. 21). The Plaintiff further asserts that if the ALJ had accepted these limitations, it would have "warranted increased supervision and redirection." *Id.* at 15. This argument also fails.

Contrary to the Plaintiff's position, an ALJ may disregard parts of medical opinions or prior administrative medical findings even when the ALJ deems the opinions or findings to be persuasive. *See Guth v. Comm'r of Soc. Sec.*, 2022 WL 8211404, at *9 (M.D. Fla. Aug. 5, 2022) (stating that the Regulations do not necessitate

"ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive") (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a); and *Freyhagen v. Comm'r of Soc. Sec*, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019), *report and recommendation adopted*, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022)); *see also Javaughn E. v. Bisignano*, 2025 WL 2470086, at *4 (M.D. Ala. Aug. 27, 2025) (same) (citations omitted). Nor is there any "legal requirement that an ALJ explain each limitation or restriction [s]he adopts or fails to adopt." *Normand v. Kijakazi*, 2023 WL 8719445, at *4 (M.D. Ala. Dec. 18, 2023) (citing *Donnie R. v. Comm'r, Soc. Sec. Admin*., 2022 WL 16702517, at *13 (N.D. Ga. Mar. 30, 2022); and *K.T.B. v. Comm'r of Soc. Sec*., 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021)).

The Plaintiff's argument that the ALJ's RFC should have included the workday/workweek interruptions, goal setting, and work adjustment-related restrictions offered by Drs. Sadovnik and Hightower is flawed in another respect as well. While the Plaintiff insists that these limitations would necessitate elevated supervision and redirection, neither Dr. Sadovnik nor Dr. Hightower proposed those measures. (Doc. 22). Indeed, quite the opposite, they concluded—as referenced above—that the Plaintiff could "meet the basic demands of work on a sustained basis despite any limitations" from his impairments. (R. 77, 87).

In sum, under the deferential standard of review that governs this appeal, the Court finds that the ALJ properly assessed the prior administrative medical findings of Drs. Sadovnik and Hightower and crafted an RFC relative to those findings that is

bolstered by substantial evidence. *See Schillace v. Comm'r of the Soc. Sec. Admin.*, 2025 WL 2470008, at *3 (M.D. Fla. Aug. 28, 2025) ("As long as the Court can ascertain from the ALJ's decision that [s]he took into account all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ.") (citation omitted).

C.

The Plaintiff's third and final challenge pertains to his severe impairment of obesity. (Doc. 21). In her decision, the ALJ considered this condition and its effects on her RFC determination as required by Social Security Ruling 19-2p. (R. 15). The ALJ noted in her decision that at a health exam in August 2021, the Plaintiff reported suffering from various symptoms, including some possibly associated with his weight. *Id.* Notwithstanding these complaints and despite his obesity, however, the ALJ observed that the Plaintiff exhibited, inter alia, a "well appearance," normal blood pressure, normal pulse, normal gait, normal abdomen, and no acute distress. *Id.* The ALJ also referenced an annual exam of the Plaintiff in February 2024 where, although the Plaintiff had a BMI of 39 and reported a number of potentially obesity-related ailments, he displayed a normal range of motion and "normal bowel sounds." *Id*. In addition, the ALJ pointed out elsewhere in her decision that the Plaintiff was able to travel by public transportation, to attend to his personal care, to prepare simple meals, to do some light household chores, and to provide care for the family pets. (R. 13, 16). After evaluating the record evidence and assessing whether the Plaintiff's obesity impacted his capacity "to perform routine movement and necessary physical activity

within the work environment," the ALJ elected not to impose any further limitations in her RFC to address this impairment. *Id.* at 14, 15.

The Plaintiff now argues that the ALJ "fail[ed] to adequately account" for his obesity. (Doc. 21 at 18). This contention suffers the same fate as his other challenges. As the above recitation of the ALJ's analysis makes clear, she appropriately considered the Plaintiff's weight problem, as well as any effect it might have on his ability to work, and her determination that no additional restrictions were necessary is buttressed by substantial evidence. *See* (R. 14, 15). The fact that the Plaintiff's obesity is a severe impairment does not dictate a different conclusion. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (ruling that the ALJ properly considered the claimant's severe impairment of obesity in formulating the RFC even though the RFC did not include any "specific functional" restrictions relating to the claimant's obesity); *Spann v. Comm'r of Soc. Sec.*, 2025 WL 2109209, at *5 (M.D. Fla. July 10, 2025) (rejecting the notion that an ALJ is required to include distinct limitations caused by an affliction into the RFC simply because the affliction is a severe impairment), *report and recommendation adopted*, 2025 WL 2106656 (M.D. Fla. July 28, 2025) (citations omitted); *Mancini v. Comm'r of Soc. Sec.*, 2021 WL 1087270, at *1 (M.D. Fla. Mar. 22, 2021) ("The [c]ourt . . . does not agree with [the claimant's] hardline position that every 'severe impairment' must be linked to a specific limitation in the RFC."); *Isom v. Saul*, 2020 WL 1099461, at *3 (M.D. Fla. Jan. 30, 2020) (stating that the ALJ's assessment that the claimant's disease was severe did not mean that the ALJ was

mandated to impose any restrictions relative to that malady); *Conroy v. Saul*, 2019 WL 4727815, at *5 (M.D. Fla. Sept. 27, 2019) (observing that "severe impairments do not necessarily result in specific functional limitations" and that an ALJ need not include corresponding limitation(s) for such impairments where they do not cause functional restrictions) (internal quotation marks and citation omitted); *Sorensen v. Berryhill*, 2018 WL 1225106, at *4 (M.D. Fla. Mar. 9, 2018) ("Diagnoses of impairments do not require [the] imposition of certain specific limitations in an RFC assessment."); *Owens v. Colvin*, 2015 WL 12856780, at *1 (M.D. Fla. Oct. 15, 2015) ("The [c]ourt rejects [the claimant's] argument that because the ALJ found that [the claimant] had [a] severe impairment, . . . he had to, as a matter of law, include a limitation in the RFC assessment specifically corresponding to that impairment."). The Plaintiff's countervailing arguments on this front are unconvincing.

IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor, to terminate any pending motions and deadlines, and to close the case.

SO ORDERED in Tampa, Florida, this 29th day of September 2026.

Christopher P. Tuite

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record